| | |
|---|---|
| DISTRICT COURT, DOUGLAS COUNTY, COLORADO<br>400 Justice Way Ste. 2009<br>Castle Rock, CO 80109<br>Telephone: (720) 437-6200 | DATE FILED: April 22, 2021 7:22 PM<br>FILING ID: C416DEA4A00CF<br>CASE NUMBER: 2021CV30292 |
| **Plaintiff:**<br>TWIN STAR ENERGY, LLC, a Colorado Limited Liability Company<br><br>v.<br><br>**Defendant:**<br>BOARD OF ADJUSTMENT OF THE CITY OF CASTLE PINES, STATE OF COLORADO, a body corporate and public, and CITY OF CASTLE PINES IN DOUGLAS COUNTY, STATE OF COLORADO, a municipal corporation. | ▲ **COURT USE ONLY** ▲<br><br>Case Number:<br><br>Division |
| **Attorneys for Plaintiff:**<br>Gregory S. Tamkin, Colo. Reg. No. 27105<br>Stephen R. Weingold, Colo. Reg. No. 52897<br>Dorsey & Whitney LLP<br>1400 Wewatta Street, Suite 400<br>Denver, CO 80202<br>Tel.: (303) 629-3400<br>Fax: (303) 629-3450<br>Email: tamkin.greg@dorsey.com<br>Email: weingold.stephen@dorsey.com | |
| **COMPLAINT** | |

Plaintiff Twin Star Energy, LLC ("Twin Star" or "Plaintiff"), by and through its undersigned attorneys, states its Complaint as follows:

## **INTRODUCTION**

1.     Twin Star owns a lot located at 7610 N. Debbie Ln. in Castle Pines, Colorado, where it operates a car wash, a 7-Eleven convenience store and a Phillips 66 gas station. On December 23, 2020, Twin Star submitted a proposal to expand its car wash, but not alter any of

**EXHIBIT A**

the structures associated with the convenience store or the gas station. Twin Star proposed upgrading the car wash, built in 2002, to a more modern "tunnel" car wash to better serve its customers. The proposal is attached hereto as Exhibit A and would have approximately doubled the size of the car wash. Castle Pines permits car washes in this zoning district, and in fact, is currently in the process of approving a much larger car wash businesses immediately adjacent to Twin Star's property.

2.      On January 14, 2021, the City Staff of Castle Pines ("City Staff"), which the City of Castle Pines empowers to respond to proposals related to zoning, issued a determination denying Twin Star's request to extend the car wash. The determination is attached hereto as Exhibit B. The City Staff based its determination on the theory that the proposed expansion was an expansion of the gas station, which is a legal non-conforming use. The City Staff determined that the car wash was an "accessory use" to the gas station, and that the expansion of an accessory use to a legal non-conforming use violated the relevant zoning ordinances.

3.      Twin Star filed a timely appeal to the Board of Adjustment of the City of Castle Pines ("Board of Adjustment"), which the City of Castle Pines empowers to hear appeals of City Staff determinations. On February 12, 2021, pursuant to Castle Pines Zoning Ordinance Section 2601A, in a 6-1 ruling the Board of Adjustment voted to uphold the City Staff's Determination on March 25, 2021. The Board of Adjustment based its ruling on the theory that the car wash is an accessory use to the gas station and such accessory use cannot be expanded.

4.      This decision was incorrect for several reasons. First, the Board of Adjustment abused its discretion because the proposed expansion of the car wash does not constitute the expansion of a legal-nonconforming use, because the car wash *is* itself a permitted use. Second,

2

**EXHIBIT A**

the Board of Adjustment abused its discretion in upholding the City Staff's determination because the car wash is not an accessory use to the gas station because it does not meet the definition of an accessory use in the City's zoning ordinance. Third, the Board of Adjustment abused its discretion because, even if the car wash was an accessory use, expansion of an accessory use is not prohibited by the relevant zoning ordinances. Fourth, the City Staff's determination constitutes is an arbitrary and unconstitutional taking because it prevents Twin Star from competing with competitors operating similar businesses, rendering that portion of the lot unusable without providing just compensation. Finally, Twin Star's proposed expansion would not significantly harm the public interest, since the City Staff has clearly determined that it is in the public interest to have several other car washes in the area, including immediately next door.

5.      Twin Star seeks certiorari review of the Board of Adjustment's ruling, compensation for the loss of the use of its property pursuant to C.R.S. § 38-1-101, and declaratory judgment that it may expand its car wash.

6.      City of Castle Pines in Douglas County, State of Colorado ("City of Castle Pines") is the entity empowered to sue and defend suits brought against the City of Castle Pines, and is obligated to dispose of liabilities of the city.  The Board of Adjustment acts on behalf of the City of Castle Pines.

## PARTIES

7.      Twin Star Energy, LLC is a Colorado Limited Liability Company that maintains its principal place of business at 7671 Shaffer Parkway, Building H, Littleton, CO 80127.

8.      Defendant Board of Adjustment of the City of Castle Pines, State of Colorado is a body corporate and politic, as a Colorado municipality situated in Douglas County, Colorado, with

**EXHIBIT A**

a principal operating address of 360 Village Square Lane, Suite B, Castle Pines, CO 80108. The Board of Adjustment was established pursuant to Article 6, Section 2-6-10 of the Municipal Code of the City of Castle Pines.

9.      Defendant City of Castle Pines in Douglas County, State of Colorado is a municipal corporation and maintains its principal place of business at 360 Village Square Lane, Suite B, Castle Pines, CO 80108.  Under Article 1, Section 1.3 of the Home Rule Charter of the City of Castle Pines, the City of Castle Pines is responsible for all rights and liabilities of the City, and may sue and defend claims related to the City.

## JURISDICTION AND VENUE

10.      The Board of Adjustment is authorized to render quasi-judicial decisions by and for the City of Castle Pines, including, without limitation, appeals of staff determinations on whether proposals are permissible under the Castle Pines Zoning Ordinances.

11.      The District Court has the authority to review the Board of Adjustment's quasi-judicial ruling issued on March 25, 2021 pursuant to C.R.C.P. 106(a)(4).

12.      Twin Star is a proper party in interest to bring this action because it has been negatively impacted by the Board of Adjustment's adverse ruling on its proposed expansion Pursuant to C.R.C.P. Rule 59, C.R.S. § 13-51-101, *et seq.*, C.R.S. 24-6-401(9)(b), and C.R.C.P. Rule 106(a)(4), the Court has jurisdiction to hear this matter.

13.      Venue is proper pursuant to C.R.C.P. Rule 98(c) because  defendants are located in Douglas County, Colorado, the action is premised upon a quasi-judicial land use decision effectuated in Douglas County, Colorado, and because the decision relates to real property in Douglas County, Colorado.

**EXHIBIT A**

## GENERAL ALLEGATIONS

**I.      Twin Star's 7610 N. Debbie Ln. Businesses and Expansion Proposal**

14.      Twin Star Energy, LLC has operated a car wash, a convenience store, and a gas station at 7610 N. Debbie Ln. since 2005. These businesses are housed in three separate buildings and run by three separate parties: Phillips 66, 7-Eleven, and Twin Star. The Twin Star employees work in all three buildings, but each business operates independently with different arrangements:

      a.      The convenience store is a 7-Eleven franchise contained in its own free-standing building. 7-Eleven owns the inventory in the store and collects the revenue directly. 7-Eleven controls the convenience store through its 7-Eleven Business Conversion Program franchisee operator model and provides Twin Star a share of the profits as compensation for Twin Star's employees operating and managing the store.

      b.      Similarly, Phillips 66 owns the fuel stored in the separate gas station facility, retains the profits from its sale, and pays a fixed monthly fee to Twin Star to operate the station.

      c.      The car wash, also located in a free-standing building, is the only business over which Twin Star exercises 100% control and from which it derives direct revenue. Most car wash sales are purchased directly with credit cards at a kiosk at the front of the car wash building, but they can also be purchased at the Phillips 66 fuel pumps (in which case Phillips 66 sends the revenue to Twin Star) or inside the convenience store as a register dedicated to the car wash.

**EXHIBIT A**

Thus, while all three of the businesses are overseen by overlapping employees and are located on the same plot of land, they operate independently/separately.

15.     Twin Star tracks the purchase location of car washes, and more car washes are purchased directly at the car wash entrance than at the Phillips 66 gas station and the 7-Eleven store combined.  The following chart provides recent car wash purchase data at the Debbie Lane location:

|  | Nov 2020 | Dec 2020 | Jan 2021 |
|---|---|---|---|
| Direct Car Wash Purchases | 1301 | 1090 | 1284 |
| Combined 7-Eleven and Phillips 66 Purchases | 827 | 845 | 911 |
| Total Car Washes Purchased | 2128 | 1935 | 2195 |

16.     Customers treat each of the businesses as stand-alone businesses. For example, some customers may just stop at the location for a car wash. Others, may just use the convenience store to purchase a cup of coffee, making no other purchases. Still others may only stop for fuel.

17.     It is well recognized in Castle Pines that car washes are stand-alone businesses. Castle Pines has determined that car washes are permitted as indoor retail/service businesses and has provisionally approved a large car wash installation on the lot immediately adjacent to Twin Star on Castle Pines Parkway. This proposal does not include a gas station or convenience store.

18.     Indeed, this is one of two car washes that will be visible from 7610 N. Debbie Ln. A second lot with a car wash, convenience store, and gas station is across the street and one block west. The city has authorized that business to refurbish all three buildings, install new fuel tanks, and make other improvements to the lot.

19.     On top of the two nearby carwashes, several other automobile-related businesses operate in the vicinity of the Debbie Lane location. A third set of fuel pumps associated with a

6

**EXHIBIT A**

King Soopers supermarket, an automotive repair shop, and a tire shop are all less than .3 miles away from Twin Star's businesses, as illustrated below:



20.    Twin Star's car wash is almost two decades old. Twin Star wishes to expand the car wash into a tunnel car wash to better-serve members of the public and to compete with other tunnel car washes being built nearby. The proposal will result in a modest expansion of the length of the car wash.  A current aerial view and a drawing of the proposed expansion are below:



**EXHIBIT A**



21.     Twin Star's proposal will not cause any expansion or change to the Phillips 66 fuel pumps or the 7-Eleven convenience store. The only expansion will be to the car wash structure, itself. Twin Star submitted a proposal requesting authorization to expand the car wash on December 23, 2020.

22.     Twin Star needs to expand its car wash in order to compete with the neighboring car washes, including the very modern one recently approved by the City Staff. If Twin Star is not able to compete with these nearby businesses, both of which are visible from 7610 N. Debbie Ln., it will lose virtually all the revenue generated by its car wash, and will be unable to make use of the purpose-built car wash building or machinery inside.

**II.     The City Staff's Determination**

23.     As noted above, the Castle Pines City Staff approved a proposal to build a much larger car wash on the adjacent lot to the Debbie Lane car wash. It does not dispute that a car wash is an authorized use in this zoning district. However, the City Staff nevertheless issued a determination rejecting Twin Star's expansion proposal on January 14, 2021.

**EXHIBIT A**

24.     The City Staff reasoned that, because its zoning ordinances no longer permit the construction and authorization of a gas station, Twin Star's proposal to expand its car wash should be rejected.[1] The City Staff based its decision on two zoning codes: 2002.01 and 2002.02.

a.      Castle Pines Zoning Ordinance 2002.01 states that any legal "nonconforming use shall not be enlarged, expanded, extended, increased, or moved to occupy an area of land or area in a structure which was not occupied before this Ordinance was adopted or amended."

b.      Castle Pines Zoning Ordinance 2002.02 states that "[a]n existing structure devoted to a nonconforming use shall not be enlarged, expanded, extended or altered to accommodate the nonconforming use or any other use not allowed in the district in which the structure is located."

See Exh. 2 at 1-2.

25.     The City Staff went on to conclude that "[b]ased on information presented to the City, it is evident that the current carwash and proposed carwash expansion is an accessory use to the existing nonconforming Automobile Service Station with Gasoline Pumps." *Id.* at 2. Implicit in the City Staff's determination was that accessory uses cannot be enlarged or expanded under either of the aforementioned zoning ordinances.[2]

---

[1] Douglas County's zoning rules permitted gas stations when Twin Star developed 7610 N. Debbie Ln. The zoning ordinances were changed more than a decade later, and Twin Star's gas station is currently a legal non-conforming use.

[2] Following the determination, in an informal meeting between the City Staff and Twin Star, the City Staff noted that Twin Star could apply to have each use on the lot treated individually and, if approved, could then expand the car wash as such expansion would not constitute an expansion of a nonconforming use, but the expansion of a separate use. The City Staff's recognition that the car wash business can be treated as separate reinforces the point that it was improper to deny the

**EXHIBIT A**

### III.     Twin Star's Appeal to the Board of Adjustment

26.     In response to the City Staff's Determination, Twin Star appealed to the Board of Adjustment. Twin Star's appeal was timely and accompanied by appropriate public notices. A copy of Twin Star's Appeal is appended hereto as Exhibit C.

27.     Twin Star's appeal addressed four issues:

28.     <u>First</u>, Twin Star's proposed car wash expansion does not fit within the language of Castle Pines Zoning Ordinances 2002.01 or 2002.02. Neither the City Staff nor the Board of Adjustment disputes that a car wash is an expressly permitted use under its previous determinations. Castle Pines has repeatedly concluded that car washes of the same type as Twin Star's proposed expanded car wash are permitted as "indoor retail/service businesses" under Castle Pines Zoning Ordinance 1102.12. Thus, a car wash is not a "nonconforming use," and Castle Pines Zoning Ordinances 2002.01 and 2002.02, both of which relate exclusively to such uses, do not apply to Twin Star's car wash expansion proposal.

29.     That is, even though the gas station is a non-conforming use, there was no expansion of the gas station in accordance with those two ordinances. Namely, the gas station, itself was not being expanded or enlarged in violation of Zoning Ordinance 2002.01. Additionally, there was no existing structure devoted to a nonconforming use (i.e. the fuel station) that was being expanded or enlarged in violation of Zoning Ordinance 2002.02. Rather, the proposed expansion was of a structure not devoted to a nonconforming use.

30.     <u>Second</u>, the definition of "accessory use" in the Castle Pines Zoning Ordinance

proposed expansion of the car wash as an accessory use. In fact, the car wash is separate, but the City Staff arbitrarily refused to recognize it as such at the time.

10

**EXHIBIT A**

plainly does not include Twin Star's car wash. "Accessory use" is a defined term under Castle Pines Zoning Ordinance Section 3602 as "A use naturally and normally incidental to, subordinate to, and **devoted exclusively to the principal use**" of the property (emphasis added). As discussed above, Twin Star's car wash operates separately from its other businesses, derives separate revenue, and is used by customers who do not necessarily use the gas station or convenience store. It thus is not "devoted exclusively" to the selling of Phillips 66 fuel.

31.     Importantly, even if this car wash were an "accessory use," expansions of accessory uses to legal non-conforming uses are not prohibited under Castle Pines Zoning Ordinances 2002.01 or 2002.02. Neither regulation addresses—let alone prohibits—accessory uses. Instead, they are limited "non-conforming uses." The City Staff made a leap to determine that those zoning ordinances prohibit expansions of accessory uses.

32.     <u>Third</u>, the City Staff's inconsistent treatment of Twin Star's car wash compared to those of its neighbors was arbitrary and capricious under both Colorado and Federal law. The City Staff is permitting locations that compete with Twin Star to move forward with renovations or to be built. The City Staff discriminated against Twin Star because its lot contains a Phillips-66 gas station along with a car wash. Because the neighbor was not operating a gas station, it was permitted to move forward.

33.     Without the expansion of Twin Star's car wash, the structure and land will be effectively rendered useless. Twin Star's existing, operating car wash is an ongoing business in which it has an established interest. Customers will not frequent Twin Star's last-generation technology car wash when there is a new, modern car wash next door. The City Staff's determination condemns the car wash area as it cannot be altered to compete or otherwise used.

**EXHIBIT A**

34.     <u>Fourth</u>, Twin Star will suffer significant hardship if not permitted to expand its car wash, even though there is no harm to the community. Twin Star's proposed car wash expansion will help it better serve its customers, and car wash customers expressed their interest in an expanded Twin Star car wash at the March 25, 2021 hearing. Among other things, Twin Star will be able to offer services similar to those of its immediate neighbor, ensuring Castle Pines residents have robust competition that will lead to good service and favorable prices for car washes. Obviously, as the City Staff has approved the neighboring car wash, such establishments cannot be considered a harm to the public.

35.     In response, the City Staff argued that the expansion of the car wash would "expand the gas station" because the three businesses overlap closely and employees at the convenience store facilitate the operation of the gas station and car wash. But this is contravened by the clear evidence that most car washes are purchased without accessing the fuel pumps or the convenience store, and that many Twin Star customers do not access any other part of its business, instead opting to *only* purchase a car wash on some visits.

36.     The City Staff also notes that in other jurisdictions a car wash is an accessory use of a gas station. But the City cannot substitute Colorado case law applying a different zoning ordinance with a different definition of "accessory use" for the plain language of the Castle Pines zoning ordinance, which clearly requires that a use be "devoted exclusively" to the principal use of a property in order to be an "accessory use." The Twin Star car wash does not fit this definition, and it is therefore not an accessory use to the Phillips 66 gas station.

37.     The City Staff also argued that, although the lot could have multiple separate uses, such that conforming uses could be expanded, it was not willing to consider this lot as having

**EXHIBIT A**

multiple uses at that time. The City Staff reached this conclusion because it claims there is no historical evidence that the lot was approved for multiple uses, but rather as a gas station. Irrespective, historical data and approval history is irrelevant to the current expansion plans. There are multiple uses on the lot and those multiple uses have been contemplated and disclosed in all plans since inception, as the City Staff recognized.

38.     On March 25, 2021, a public hearing was held. A copy of the PowerPoint presentation Twin Star made at this presentation, which was sent to the City Staff for distribution prior to the meeting, is attached hereto as Exhibit D.[3]

39.     At the close of the hearing, the Board of Adjustment rejected Twin Star's Appeal via a 6-1 vote. The members of the Board of Adjustment who provided a rationale for their vote indicated that the basis for their ruling was that Twin Star's proposed car wash was an "accessory use" to the gas station and as a result, expansion of an accessory use was prohibited by the zoning ordinances. The Board members were not necessarily against expansion, per se, but were interpreting the zoning ordinances to prohibit expansion in this case.

## **FIRST CLAIM FOR RELIEF**
**(Certiorari Review, against both Defendants)**

40.     Twin Star re-alleges and incorporates by reference the allegations of all the foregoing paragraphs as if fully restated herein.

41.     C.R.C.P. Rule 106(a)(4) allows for certiorari challenges "where any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has

---

[3] At the time of the filing of this Complaint, the Board of Adjustment's minutes and related materials from the March 25, 2021 hearing were not yet available.

**EXHIBIT A**

exceeded its jurisdiction or abused its discretion, and where there is no plain, speedy, and adequate remedy otherwise provided by law."

42.     The Board of Adjustment's March 25, 2021 ruling was a final resolution of Twin Star's proposal, and was quasi-judicial in nature. No other speedy or adequate remedy exists to review or reconsider its ruling.

43.     In upholding the City Staff's denial of Twin Star's proposal, the Board of Adjustment abused its discretion, acted in an arbitrary and capricious manner, ignored the plain language of its zoning ordinances, and engaged in conduct constituting a taking in violation of Colorado law.

44.     Therefore Twin Star requests that the District Court overturn the Board of Adjustment's March 25, 2021 ruling and direct the Board of Adjustment to approve Twin Star's proposal.

### SECOND CLAIM FOR RELIEF
**(Substantive Due Process – Declaratory Judgment and Damages, against both Defendants)**

45.     Twin Star re-alleges and incorporates by reference the allegations of all the foregoing paragraphs as if fully restated herein.

46.     Twin Star seeks a declaration that the Board of Adjustment's March 25, 2021 ruling is arbitrary and unconstitutional under Colorado law.

47.     By treating Twin Star differently than its competitors, the Board of Adjustment has arbitrarily and unconstitutionally deprived Twin Star of its rights.

48.     The Board of Adjustment was operating under color of Colorado law.

49.     The Board of Adjustment's action deprived Twin Star of a right guaranteed under federal law and the U.S. constitution.

14

**EXHIBIT A**

50.     Twin Star has been adversely affected by the Board of Adjustment's ruling, and the rights it asserts are present and legally cognizable.

51.     There is an existing and actual legal controversy that can be effectively resolved via a declaratory judgment from this Court, namely whether the Board of Adjustment's March 25, 2021 ruling violates Colorado law.

52.     The adjudication of Twin Star's declaratory judgment will effect a change in Twin Star's present rights or status with respect to an existing question and legal controversy.

53.     Twin Star is entitled to declaratory judgment under Colorado law that the actions of Defendants were arbitrary, capricious and unconstitutional.

54.     Twin Star has been damaged by the Board of Adjustment's arbitrary and unconstitutional usurpation of its rights, has been forced to expend time and attorneys' fees, has lost profits because its building of a new car wash has been delayed, and has been deprived of the use of its property.

55.     Twin Star requests an interpretation of its rights and legal status under the above law and facts and compensation for the deprivation of its use of its property.

**THIRD CLAIM FOR RELIEF**
**(Declaration of Taking and Determination of Just Compensation Pursuant to C.R.S. § 38-1-101, against both Defendants)**

56.     Twin Star re-alleges and incorporates by reference the allegations of all the foregoing paragraphs as if fully restated herein.

57.     Because the Board of Adjustment has upset Twin Star's investment expectations for its property and effectively prevented Twin Star from competing with adjacent car wash business, the Board is effectively condemning a portion of Twin Star's property without

15

**EXHIBIT A**

substantive due process or just compensation. Accordingly, it is entitled to declaratory judgment that the Board of Adjustment's ruling is unconstitutional.

58.    Twin Star has been deprived of its reasonable investment expectations because its investment in the car wash and its ongoing business will be rendered useless.

59.    Twin Star has been deprived of the use of its property as a gas station.

60.    Under Colorado law, private property shall not be taken or damaged, for public or private use, without just compensation.

61.    The Board of Adjustment did not use eminent domain powers to enact the March 25, 2021 ruling.

62.    The City Staff and Board of Adjustment have permitted at least one other nearby businesses to operate modern car wash with the same or similar features as Twin Star's proposed expanded car wash.

63.    Twin Star's car wash will not be able to compete with these more modern competitors if it is not permitted to expand its car wash. Moreover, because any other use of the property would require alteration and enlargement of the structure, which has been prohibited, Twin Star can no longer use the property, other than as a non-competitive old car wash.

64.    Twin Star has thus been significantly damaged as a result of the Board of Adjustment's March 25, 2021 ruling.

65.    The Board of Adjustment's March 25, 2021 ruling did not compensate Twin Star for this taking.

66.    Twin Star is entitled to a declaration that the Board of Adjustment's March 25, 2021 ruling constitutes a taking, and for compensation from the City of Castle Pines in the amount

16

**EXHIBIT A**

of Twin Star's lost use.

## **PRAYER FOR RELIEF**

WHEREFORE, Twin Star respectfully requests that this Court enter judgment in its favor granting the following relief:

A.　　For judgment in its favor on each and every cause of action alleged herein;

B.　　For the overturn of the Board of Adjustment's March 25, 2021 ruling and a determination that Twin Star may move forward with the proposed plan;

C.　　For declaratory judgment that the Board of Adjustment's March 25, 2021 ruling is arbitrary and unconstitutional under Federal law.

D.　　For declaratory judgment that the Board of Adjustment's March 25, 2021 ruling constitutes a taking and should therefore be reversed;

E.　　For an award of damages for harms to Twin Star resulting from the Board of Adjustment's March 25, 2021 ruling;

F.　　For compensation in the amount of the injury to Twin Star's business caused by the Board of Adjustment's March 25, 2021 ruling;

G.　　For prejudgment interest on all amounts claimed to the extent permitted by law;

H.　　For reimbursement of Twin Star's fees and costs, including attorney's fees; and

I.　　For Such other and further relief as this Court may deem just and proper.

**EXHIBIT A**

Respectfully submitted this 22nd day of April, 2021

*s/ Gregory S. Tamkin*
Gregory S. Tamkin
Stephen R. Weingold
DORSEY & WHITNEY LLP
1400 Wewatta Street, Suite 400
Denver, CO 80202
Telephone: (303) 629-3400
Facsimile:  (303) 629-3450
Email: tamkin.greg@dorsey.com
Email: weingold.stephen@dorsey.com

**ATTORNEYS FOR PLAINTIFF**

Address of Plaintiff
7671 Shaffer Parkway, Building H
Littleton, CO 80127

**EXHIBIT A**

DATE FILED: April 22, 2021 7:22 PM
FILING ID: C416DEA4A00CF
CASE NUMBER: 2021CV30292

# Exhibit A



**7-11 CAR WASH EXPANSION – 7610 DEBBIE LANE, CASTLE PINES, CO 80108**

# MEMORANDUM

| | |
|---|---|
| **TO:** | MR. NICHOLAS HUFFORD, PLANNER II, CITY OF CASTLE PINES |
| **FROM:** | CHRIS MUELLER PE NCEES - ENTITLEMENT AND ENGINEERING SOLUTIONS |
| **SUBJECT:** | 7-11 CAR WASH EXPANSION |
| **DATE:** | 12/23/2020 |
| **CC:** | MARK PERRINO – MAPCM, MARY KASAL PE – EES, KRYSTA HOUTCHENS PE - EES |

Mr. Hufford,

This memo serves to introduce this proposed car wash expansion project.  Parcel information is listed below, for convenience:

- State Parcel Number: 235103108006.

- Site size: 1.16 acres

- Subdivision: Tract B1 of Charter Oaks 5th Amendment

- Public Land Survey System: Township 7 South, Range 67 West, Section 3, Quarter Section 1

- Zoning: Business

- Land Use: Mixed Use/Commercial/Civic

- Water and Sanitary District: Castle Pines North Metro District

- Water Supply Zone: Central

- Fire District: South Metro FD

- Watershed: Middle South Platte – Cherry Creek, Happy Canyon Creek

- HOA: Charter Oaks HOA

- Owner: Twin Star Energy LLC, 7671 Shaffer Parkway, Building H, Littleton, CO 80127-3016.

**EXHIBIT A**



Purpose of Proposal: The existing 7-11 Convenience Store site consists of the convenience store, car wash, and covered vehicle fuel dispensers.  The owner would like to expand the existing car wash structure and renovate it into a tunnel car wash, for customers.  On behalf of Twin Star Energy LLC, we respectfully request permission for this expansion, and guidance as to permitting requirements.

Should you have any questions, feel free to contact me at 314-737-2758 and chris.mueller@ees.com.

Sincerely,

**Entitlement and Engineering Solutions, Inc.**

Chris Mueller PE NCEES, Project Manager

**EXHIBIT A**



EAST 1ST AVENUE

SCALE IN FEET
0        20        40
IF BAR DOES NOT MEASURE 1 INCH
THEN DRAWING IS NOT TO SCALE

N

E 1st Ave

RETAINING WALL

HOA UTILITY EASEMENT (EXCEPTION 16)

RETAINING WALL

BUILDING OVERHANG (TYPICAL)

PR. VACUUM
STALLS

1 STORY BRICK BUILDING
4395 Sq. Ft. ±

EXPAND EX. CARWASH
BUILDING AND REMODEL
INTO AN AUTOMATIC
TUNNEL CARWASH
26'x75'

ROADWAY PURPOSES
EASEMENT
(EXCEPTION 16)

BUILDING
HEIGHT=24'8

BUILDING
HEIGHT=19'8

6 SPACES (REGULAR)

Tract B-1

5 SPACES (REGULAR)

ASPHALT

N Daisie Ln

CANOPY
22'-8

CAROLYN DRIVE

BEVERLY BOULEVARD

ROADWAY PURPOSES
(EXCEPTION 16)

20' BUILDING SETBACK
PER "BUSINESS" ZONING

PEDESTRIAN EASEMENT
(EXCEPTION 16)

PR. UTILITY EASEMENT (EXCEPTION 16)

CASTLE PINES PARKWAY

© 2020 Google

© 2020. ALL RIGHTS RESERVED

P:\FINNEGAN ENERGY - CONCEPTUAL SITE PLAN\NISKOO, CASTLE PINES - 7610 N DEBBIE LANE\08 CAD\C0P DWG

EES
ENGINEERING AND
ENVIRONMENTAL
SOLUTIONS INC.
9501 E Cherry St. Suite 300
Glendale, CO 80246
303.572.7597 www.ees-us.com

CONCEPTUAL SITE PLAN
7-11 CAR WASH EXPANSION
7610 Debbie Lane, Castle Pines, Colorado 80108

CONCEPTUAL SITE PLAN

| PROJECT NO: | TWS004.01 |
| DESIGNED BY: | CM |
| DRAWN BY: | CM |
| DATE: | 12/23/2020 |

C1.0

EXHIBIT A

DATE FILED: April 22, 2021 7:22 PM
FILING ID: C416DEA4A00CF
CASE NUMBER: 2021CV30292

# Exhibit B



**Community Development**

Phone:  303-705-0200
Fax:  303-688-9414
www.castlepinesco.gov

**City of Castle Pines**
360 Village Square Drive, Suite B
Castle Pines, Colorado 80108

January 14, 2021

Chris Mueller, Project Manager
*[sent via email*: chris.mueller@ees.us.com *]*

### RE:  Legal Nonconforming Use Determination for 7610 Debbie Lane

Dear Mr. Mueller,

Your recent inquiry to enlarge the carwash and modify the site at 7610 Debbie Lane ("the "Property") necessitated Staff's evaluation of the existing use of the Property as an Automobile Service Station with Gasoline Pumps.

The Property is located in the Business Zone District and is subject to Ordinance 16-09, Eliminating the Principal Use of Automobile Service Station with Gasoline Pumps and Section 20, Nonconforming Uses and Structures of the City of Castle Pines Zoning Ordinance; both documents are attached hereto. Pursuant to Ordinance 16-09, in 2016, the City of Castle Pines eliminated the land use of Automobile Service Station with Gasoline Pumps within the Business Zone District.  As a result, the existing Automobile Service Station with Gasoline Pumps on the Property is a legal nonconforming use.

City Staff has closely evaluated your request to expand the carwash and modify the site in accordance with the City of Castle Pines Zoning Ordinance provisions for nonconforming uses which state:

> A use of land which was lawful before this Ordinance was adopted or amended may continue to exist even though the use would be prohibited, regulated, or restricted under the provisions of this Ordinance and amendments, subject to the following provisions:
>
> **2002.01 Such nonconforming use shall not be enlarged, expanded, extended, increased, or moved to occupy an area of land or area in a structure which was not occupied before this Ordinance was adopted or amended.**
>
> **2002.02 An existing structure devoted to a nonconforming use shall not be enlarged, expanded, extended or altered to accommodate the**

### EXHIBIT A

**nonconforming use or any other use not allowed in the district in which the structure is located.**

2002.03 If any nonconforming use is discontinued for any reason for a period of more than 12 consecutive months, a subsequent use of such land or structure shall conform to the provisions of this Ordinance and as thereafter amended.

2002.04 A nonconforming use of land may be changed only to a use that is allowed in the zoning district in which the land is located.

2002.05 Should a structure devoted to a nonconforming use be damaged or destroyed by any means, the structure may be reconstructed and the nonconforming use reestablished pursuant to section 2002.02.

Based on information presented to the City, it is evident that the current carwash and proposed carwash expansion is an accessory use to the existing nonconforming Automobile Service Station with Gasoline Pumps.  City Staff has made the administrative determination that expansion of the carwash would constitute an expansion of this nonconforming use in violation of Sections 2002.01 and 2002.02 of the Zoning Ordinance.

If you require further information, do not hesitate to call me.

Sincerely,

*Sam Bishop*

Sam Bishop, AICP, Community Development Director

Attachments:

- Ordinance 16-09, Eliminating the Principal Use of Service Station with Gasoline Pumps
- Section 20, Nonconforming Uses and Structures of the City of Castle Pines Zoning Ordinance

Cc:
Michael Penny, City Manager *[Michael.penny@castlepinesco.gov]*
Linda Michow, City Attorney *[linda@mcm-legal.com]*

2

**EXHIBIT A**

DATE FILED: April 22, 2021 7:22 PM
FILING ID: C416DEA4A00CF
CASE NUMBER: 2021CV30292

# Exhibit C



**GREGORY S. TAMKIN**
**(303) 629-3438**
**tamkin.greg@dorsey.com**

February 12, 2021

<u>**VIA SMARTGOV WEB PORTAL**</u>

Planning Office Board of Adjustment
City of Castle Pines
360 Village Square Lane, Suite B
Castle Pines, CO 80108
(303) 705-0224

Re:   Appeal of January 14, 2021 Determination Concerning *7-Eleven Car Wash Expansion – 7610 Debbie Lane*

Dear Planning Office Board of Adjustment:

Twin Star Energy, LLC ("Twin Star") owns a car wash, gas station, and convenience store located at 7610 Debbie Lane, Castle Pines.  On December 23, 2020, Twin Star submitted a Carwash Expansion Request, attached hereto as Exhibit A, seeking to install more modern car wash equipment which requires an expansion of the building to accommodate the new equipment. On January 14, 2021, the City Staff of Castle Pines (the "City") issued a determination (the "Determination"), attached hereto as Exhibit B, not to permit the car wash expansion.  We represent Twin Star with respect to this appeal of the City's decision and respectfully request that the Board of Adjustment reconsider the Determination.[1]

The following is the basis for the appeal of the Determination made by the City Staff:

1.    The City Staff determined that the proposed car wash expansion would constitute an expansion of a legal non-conforming use in violation of Zoning Ordinance Sections 2002.01 and 2002.02.  But, those Sections apply only to an expansion of a nonconforming use or a structure housing a nonconforming use.  The proposed expansion is only of the car wash.  Because a car wash and the building are a conforming use and a structure housing a conforming use, the denial of the expansion based on those Sections was in error.

2.    To attempt to make those sections applicable, the City Staff concluded that the car wash was an "accessory use" to the gas station.  "Accessory use" has a specific definition in the Zoning Ordinances.  That definition requires that the car wash's use be "devoted exclusively" to the gas station.  Because neither the current car

---

[1] This appeal is timely, as it is being presented to the City within 30 days after the January 14, 2021 Determination as required by Zoning Ordinance Section 2602A ("An appeal must be made in writing and submitted to the Planning Office within 30 days of an administrative decision.").

**EXHIBIT A**



Planning Office Board of Adjustment
February 12, 2021
Page 2

wash nor the proposed expansion is devoted exclusively to the fueling activity, it was error to consider the car wash an "accessory use."

3.    The City has permitted other car washes to be built, demonstrating that they are a permitted use and likewise that they are not an "accessory use" to another use of a site.  Although the City previously advised Twin Star that it would not approve any proposal that it tendered to build a car wash on the neighboring lot, it has now approved another developer's proposal to build a car wash on the same adjacent lot.  In this context, denying Twin Star's request to expand its car wash on its existing lot is arbitrary, and the City should not treat Twin Star differently than others.

4.    It is unfair and creates a hardship for Twin Star not to allow modernization, especially when the City is approving a modern car wash next door.

**Background**

Currently, the Debbie Lane site consists of the convenience store, covered vehicle fuel dispensers, and a free-standing automatic car wash building.  Twin Star would like to improve the existing car wash structure and renovate it into a tunnel car wash, bringing it up to the level of service consistent with newer car washes as an amenity to the community.  This would involve expanding the existing, older car wash building to accommodate the equipment required for a tunnel wash.  The Debbie Lane store was established in 2002.

The car wash was originally proposed by Twin Star's predecessor in interest, and approved by Douglas County (the City's predecessor in interest) in 2001.  The proposal for the lot listed its three proposed uses:

1.    A convenience store,

2.    A car wash, and

3.    Fuel pumps.

In 2001 all three of these uses were permitted.  Douglas County and Twin Star's predecessor in interest evaluated and approved of each of these three "proposed uses for the property" when the project was proposed.[2]

---

[2] *See* Narrative Exhibit from Farnsworth and Polk concerning Charter Oaks, Tract B, February 21, 2000, FP# 397119, available from https://apps.douglas.co.us/planning/projects/download.aspx?PosseObjectId=12119644 at page 9 of 11 (stating that "the proposed uses for this property are allowable under Douglas County zoning . . . [, and t]he gasoline/convenience store/car wash use is obviously compatible with the Total Petroleum facility to the south.").

**EXHIBIT A**



Planning Office Board of Adjustment
February 12, 2021
Page 3

Douglas County evaluated the car wash as a separate, independent use housed in a separate building,[3] with proposed separate hours of operation (due to neighbors' concerns about noise), [4] and separate lighting, noise reduction, and landscaping needs.[5]  After evaluating the proposed use of the car wash, the county approved it.

Today, the car wash operates in a separate building.  While customers may pay for a car wash at a pump or inside the convenience store, they can also pay directly at a kiosk at the entrance to the car wash.  Many Twin Star customers use the car wash without accessing the convenience store or gas station (just as customers may get coffee from the convenience store without filling up their gas tanks, and can use credit cards to purchase gas without visiting the convenience store).  In fact, the car wash derives approximately 70% of its revenue between November and March, in a completely different revenue cycle than the gas station and convenience store.

Twin Star submitted a proposal to expand its car wash on December 23, 2020.  The proposal notes that the site consists of a convenience store, car wash, and covered vehicle fuel dispensers, and specifically states that Twin Star wishes to expand the car wash.  Twin Star's proposal would in no way expand or modify the gas station on the property.  The car wash was built in 2002.  Over the course of the past 19 years, technology and consumer expectations have progressed substantially.  To remain competitive and provide a modern amenity to the community, the car wash needs to be expanded in building size and renovated to accommodate new equipment.  The modest increase in size Twin Star proposes would allow it to modernize the equipment in its car wash and better serve its customers.  As set forth in more detail below, the City Staff denied Twin Star's request.

This was not Twin Star's first effort to expand the car wash.  In 2016 it submitted a proposal to expand both the car wash and gas station into the neighboring lot, which the City rejected as an expansion of a nonconforming use.  To avoid the nonconforming use expansion, Twin Star proposed at the meeting with the City that it instead only build a car wash on the neighboring lot.  The City, however, indicated that it would be disinclined to permit Twin Star's construction of only a new car wash on that neighboring property.

---

[3] *See* Charter Oaks, 5th Amendment, Tracts B-1 and B-2 NE1/4 of Section 3, T7S, R67W of the 6th P.M., Douglas County Co 1.686 Acres Site Improvement Plan – SP00-012, available from https://apps.douglas.co.us/planning/projects/download.aspx?PosseObjectId=12119650 at page 24 of 36 (showing design drawings and materials for separate car wash building).
[4] *See* Site Improvement Plan SP00-012 BP-Amoco Referral Response – August 30, 2001, Comments from Castle Pines Nor master Association, available from https://apps.douglas.co.us/planning/projects/download.aspx?PosseObjectId=12119646 at page 2 of 338 (objecting to the proposed project and noting the County's plan to curtail the car wash's hours of operation more narrowly than those of the gas station) .
[5] *See* Letter from Douglas County Community Development Department to Ron Guerts/David KirkBaum dated June 6, 2001, available from https://apps.douglas.co.us/planning/projects/download.aspx?PosseObjectId=12119646 at page 7 of 388 (suggesting modifications to landscaping, screening, and walls specifically with respect to the car wash).

**EXHIBIT A**



Planning Office Board of Adjustment
February 12, 2021
Page 4

Nevertheless, Twin Star understands that the City Staff is currently in the process of authorizing another developer to build a car wash on the very same adjacent lot onto which Twin Star previously sought to expand.  Not only is the City Staff taking a different position with this new developer than it did with Twin Star, it is preventing Twin Star from its expansion, thus preventing Twin Star from competing.  The City Staff's action is effectively taking away one of Twin Star's uses of its site.  This would significantly injure Twin Star.

The City has allowed the adjacent car wash to move forward because a car wash is a permitted use under zoning regulations.  Twin Star asks to be treated the same way as its neighbor, and that it be allowed to expand its car wash—a permitted use—to better serve its customers.

**The City Staff's Determination**

As set forth in the January 14, 2021 Determination, "City Staff has made the administrative determination that expansion of the car wash would constitute an expansion of this nonconforming use in violation of Sections 2002.01 and 2002.02 of the Zoning Ordinance."  The City Staff applied the nonconforming use sections of the Zoning Ordinances because it determined "that the current carwash and proposed carwash expansion is an accessory use to the existing nonconforming Automobile Service Station with Gasoline Pumps."

**Bases for Reconsideration by the Board of Adjustment**

City Staff improperly applied the Sections 2002.01 and 2002.02.  Neither of those ordinances prevents expansion of the car wash building as it is neither a non-conforming use nor a non-conforming structure.  Likewise, the car wash does not meet the definition of an accessory use as set forth in the Zoning Ordinances.  The approval process of the car wash on the neighboring lot proves these points:  that car wash is not a nonconforming use and is not an accessory to anything, showing that car washes are appropriate uses in the Zoning District. Unfortunately, it appears that Twin Star, which was previously advised it could not install a car wash on that lot, is being treated unfairly.

a. *The Zoning Sections cited by the City in its Determination Acknowledge and do not Prohibit Twin Star's Proposed Expansion of the Car Wash.*

While the gas station adjacent to the car wash was permitted when it was built, the City subsequently modified its zoning ordinances to prohibit gas stations.  As a result, the gas station is a legal nonconforming use.  Because the gas station is nonconforming, the City Staff cites Zoning Ordinance Sections 2002.01-02 as the bases for its determination that the car wash expansion is not permitted. These, however, regulations do not apply.

Zoning Ordinance Section 2002.01 only applies to uses which are nonconforming.  It states that:

**EXHIBIT A**



Planning Office Board of Adjustment
February 12, 2021
Page 5

> [A] nonconforming use shall not be enlarged, expanded, extended, increased, or moved to occupy an area of land or area in a structure which was not occupied before this Ordinance was adopted or amended.

The car wash is an indoor retail/service business, which is a permitted use and has been permitted by the City in other locations.  Expanding the car wash will not expand the use of the gas station (the nonconforming use).  As there will be no expansion of a nonconforming use, Section 2002.01 does not apply to Twin Star's request.

Zoning Ordinance 2002.02 only applies to the expansion of structures used for a nonconforming purpose.  It states that:

> 2002.02 An existing structure devoted to a nonconforming use shall not be enlarged, expanded, extended or altered to accommodate the nonconforming use or any to in the district in which the structure is located.

The car wash structure does not relate to a nonconforming use.  A car wash is a separate business that can stand alone (and the city has correctly concluded that it is permitted by zoning regulations when allowing several other car washes to be built and expand).  It has nothing to do with fueling or pumps.  Many customers will visit the lot and use the car wash without filling up with gas or visiting the convenience store, and vice versa.  This is why Twin Star's car wash has its own payment station—so customers can use the car wash without needing to take the potentially unnecessary steps of visiting fuel pumps or a convenience store attendant.  Thus, this section does not apply either.  Moreover, the Section makes it clear that each structure on a site must be viewed separately and independently because the Section only relates to structures devoted to nonconforming uses, as opposed to all structures.

As neither Section prevents expansion of the car wash, the City Staff's Determination based on these sections was in error and should be reversed.

*b. The Car Wash does not Meet the Zoning Ordinance's Definition of Accessory Use*

Even though the car wash does not fit within Zoning Ordinance Sections 2002.01 and 2002.02, the City Staff rejected Twin Star's proposal because it claims that the car wash is an "accessory use" to the gas station.  But, the Zoning Ordinances make clear that a car wash is not an accessory use.  "Accessory use" has a specific statutory definition.  It is not a use that is simply related to another use, but rather must be "naturally and normally incidental to, subordinate to, and **devoted exclusively** to the principal use."  Zoning Ordinance Section 3602 (emphasis added).  For example, if a helipad were not otherwise permitted to be built in a neighborhood, it might be permitted as an accessory use to a hospital.  In this circumstance the only use of the helipad would be to further the hospital's provision of emergency services.

Twin Star's car wash does not fit this definition.  Customers purchase car washes separately.  They can access the car wash without accessing the convenience store or fuel pumps.  By definition, the car wash is *not* "devoted exclusively" to the gas station.  It is not now—

**EXHIBIT A**



Planning Office Board of Adjustment
February 12, 2021
Page 6

nor has it historically been—an accessory use.  Instead, the car wash is a permitted use (just like a convenience store) that operates independently and which is not "devoted exclusively" to the gas station.

In treating the car wash as an "accessory use," the City Staff seemed to rely on the fact that fuel pumps, convenience stores, and car washes all relate to automobiles and are often found and operated together.  We recognize that these business operate together, but through the Zoning Ordinances, Castle Pines has unambiguously limited accessory uses *only* to instances where the use is "devoted exclusively" to the primary use or uses of the property.[6]  In the absence of ambiguity, it is improper for the City Staff to look beyond the regulation at some general sense of whether car washes often are available at gas stations.  It must apply the plain language of the statute.  *See Shupe v. Boulder County*, 230 P.3d 1269, 1273 (Colo. App. 2010) (overturning county's interpretation of primary and accessory uses as contrary to the plain language of its land use ordinance and declining to give deference to the city's statutory interpretation).  Twin Star recognizes that there is overlap between its three customer bases, and that all three businesses are often found together and operate in a complementary fashion.  But the three businesses have very different revenue structures and profit cycles.  Customers use each site differently.  One customer may stop for coffee at the c-store every day.  Another may purchase fuel on her way home once per week.  A third may only get her car washed at this facility once a week in the winter months.  Those are all different uses – none is an accessory use "devoted exclusively" to the others.

   c. *Permitting a Car Wash to Open and Compete in the Lot Immediately Adjacent to Twin Star's while Rejecting Twin Star's Expansion Proposal is Arbitrary and Capricious*

Authorizing a competitor's development of a tunnel car wash while prohibiting Twin Star from building one arbitrarily discriminates against Twin Star's car wash and in favor of other car washes engaged in precisely the same business.  This is contrary to Colorado law.  *See Hale v. Denver*, 159 Colo. 341, 346, 411 P.2d 332, 335 (Colo. 1966) (holding that ordinance prohibiting business from displaying goods outside but exempting gas stations and garden supply stores was arbitrary and unconstitutional when applied to a store that sold the same materials as gas stations and garden supply stores).

Twin Star's car wash operates the same business as the proposed adjacent car wash.  Twin Star's proposed expanded car wash will function the same way as the proposed adjacent car wash.  Indeed, Twin Star even previously proposed an expansion of its car wash into the adjacent lot—the very thing the City is now in the process of allowing a competitor to do.  To permit one project while rejecting the other simply because a gas station is also located on the lot, in a separate structure, would unfairly favor Twin Star's competitor.  To do this while

---

[6] To the extent that other entities may have concluded that a car wash may be an accessory use to a gas station, those entities have different zoning ordinances with different definitions of accessory use.

**EXHIBIT A**



Planning Office Board of Adjustment
February 12, 2021
Page 7

simultaneously preventing Twin Star from expanding even within its own existing lot is in clear violation of Colorado law.[7]

     d. *Denial of this Appeal Will Cause A Substantial Hardship to Twin Star Whereas Granting the Appeal Will Positively Impact The Neighborhood*

     Twin Star is not asking for a large expansion of its car wash, or proposing a renovation of its entire facility that will significantly increase its footprint in the neighborhood or expand the fuel station. The expansion request will not impact lighting, risks of fire, or in any way prejudice the public health, safety, comfort, morals, or general welfare of the inhabitants of Castle Pines.

     Instead, Twin Star seeks to modernize its existing structure to better serve its customers. We do not believe it is the intent of the City to prohibit improvements to an existing structure by providing new equipment (and hence expanding the building), for a use that is allowed in the zone district. It would be a huge detriment to the community if a property owner was not allowed to make improvements to a conforming use. That does not appear to be the intent of the 2016 modifications either, which are to prohibit the expansion of the gas use.

     If a car wash is built next door and Twin Star is left without the ability to modernize its facility, Twin Star's car wash could be forced out of business. The City's zoning ruling would have the effect of preventing Twin Star from making any other use of this building. An empty or underused, aging car wash that cannot be maintained under the city's Zoning Ordinance is actively harmful to all parties involved. Moreover, it would be improper for the City to arbitrarily favor one business over another in offering the same service.

     On the other hand, permitting the car wash to expand will treat Twin Star the same way the City Staff has treated other car wash operators. Twin Star will be able to compete with its new neighbor, and this robust competition will give Castle Pines residents access to clean, modern car washes. Both Twin Star and the community will benefit.

**<u>Conclusion</u>**

     Twin Star is a proud member of the Castle Pines business community. It has served residents of Castle Pines for more than fifteen years. Twin Star wishes to continue to operate its car wash and other businesses in Castle Pines. The Sections cited by the City Staff do not preclude expansion. Additionally, Twin Star's car wash is not an accessory use to its gas station because the car wash is not "devoted exclusively" to its gas station. Customers can—and do—utilize it without accessing the adjacent gas station or convenience store. Twin Star's proposed expansion will not expand the gas station's operation. Instead, it will enhance the quality of car

---

[7] Twin Star notes that the developer of the proposed adjacent car wash acknowledged this disparity in treatment and claimed it was a result of the developer being a "local" in Castle Pines. The City has indicated that it does not have a policy discriminating against foreign-owned business, but there does not seem to be a good explanation of why Twin Star was previously informed it could not put a car wash, only, on the adjacent property whereas a native-owned business is receiving such an authorization.

**EXHIBIT A**



Planning Office Board of Adjustment
February 12, 2021
Page 8


wash services Twin Star offers its customers and allow Twin Star to compete with a new competitor opening next door.  If Twin Star's car wash is not treated the same way as its competitor's proposed car wash, Twin Star will be significantly injured.  As a consequence, we respectfully request that the Board of Adjustment reverse the previous determination and direct that Twin Star be permitted to proceed with its plans to expand and modernize its car wash.

Very truly yours,

DORSEY & WHITNEY LLP

*s/ Gregory S. Tamkin*

Gregory S. Tamkin


**EXHIBIT A**

DATE FILED: April 22, 2021 7:22 PM
FILING ID: C416DEA4A00CF
CASE NUMBER: 2021CV30292

# Exhibit D



# Appeal of Denial of Expansion of Car Wash at 7610 Debbie Lane

**For Twin Star Energy, LLC**

**Greg Tamkin**
**Stephen Weingold**

**March 25, 2021**

© Dorsey & Whitney LLP

**EXHIBIT A**



7610 Debbie Lane Car Wash

**EXHIBIT A**

2



**EXHIBIT A**

# Proposed Car Wash Next Door





**EXHIBIT A**



# Determination Letter

"**2002.01 Such nonconforming use shall not be enlarged, expanded, extended, increased, or moved …**"

"**2002.02 An existing structure devoted to a nonconforming use shall not be enlarged, expanded, extended or altered to accommodate the nonconforming use**"

"**Based on information presented to the City, it is evident that the current carwash and proposed carwash expansion is an accessory use to the existing nonconforming Automobile Service Station with Gasoline Pumps**."

DORSEY
always ahead

5

**EXHIBIT A**

# Issues on Appeal:

1. Is the expansion of the car wash an expansion of a nonconforming use or structure devoted to a nonconforming use?

2. Is the car wash an accessory use to a non-conforming use and therefore an expansion of that non-conforming use.

3. Will Twin Star's expansion of its car wash cause substantial detriment to the public good?



6

# A Car Wash is a Permitted Use

"[T]he Director has interpreted the "Retail/service-indoor" principal use (a use-by-right in the Business Zone District) to include indoor car washes."

- Staff Report at 4



7

**EXHIBIT A**

# Accessory Use

<u>Accessory Use:</u>  A use naturally and normally incidental to, subordinate to, and **devoted exclusively** to the principal use.

- City of Castle Pines Zoning Ordinance 3602



**EXHIBIT A**

# The Car Wash Is An Independent Business

- Most customers buy car washes without accessing the convenience store or fuel pumps

|  | Nov-20 | Dec-20 | Jan-21 |
|---|---|---|---|
| Direct Car Wash Purchases | 1301 | 1090 | 1284 |
| Combined 7-Eleven and Fuel Pump Purchases | 827 | 845 | 911 |
| Total Car Washes Purchased | 2128 | 1935 | 2195 |

- The car wash, 7-Eleven convenience store and Phillips 66 fuel pumps are separate businesses



**EXHIBIT A**

9

# The Car Wash is not "Devoted Exclusively" to the Fuel Service Operation

- The City Staff approved a car wash next door as a stand alone business which is not devoted exclusively to a fuel station.

- Twin Star's car wash operates separately, and most customers purchase car washes separately from other services.

- This use does not benefit or change the fuel pumps.

- An expansion of an accessory use to a nonconforming use is not prohibited by Ordinance 2002.01 or 2002.02



**EXHIBIT A**

10

# The City Staff Incorrectly Claims that the Car Wash Is An Accessory Use

The Staff Report relies on three arguments:

1.  The businesses are run together in terms of management, employees and revenue collection.

2.  The Court of Appeals ruling in *Anderson*.

3.  Douglas County determined that the car wash is an "accessory use" through its parking space requirements.



**EXHIBIT A**

11

# The Nature of the Business Does Not Make it An Accessory Use

1.  The footprint of the car wash does not determine accessory use.

2.  Point of purchase is different and employees are typically not involved.

3.  Car wash revenue is separate from 7-Eleven business and Phillips 66 business.

    - Phillips 66 pays rent to sell fuel.

    - 7-Eleven collects the direct revenue from convenience store. Twin Star merely operates.

    - Car washes purchased at pumps are tracked through a separate module and paid by Phillips 66 to Twin Star.

    - Car washes purchased in the 7-Eleven are rung up separately on a separate register.



**EXHIBIT A**

12

# *Anderson* does not support the City Staff's Determination

- The *Anderson* zoning code specifically listed a car wash as an accessory use to a gas station.

- The *Anderson* gas station owner did not charge for car washes, and instead offered them for free to anyone who purchased gas.

- The *Anderson* gas station owner "needed" the car wash to "make the filling station more competitive and economically viable."



**EXHIBIT A**

13

# Douglas County Never Determined that the Car Wash was an Accessory Use

- Douglas County did not say it was treating the car wash as an accessory use.

- Douglas County ignored the car wash altogether in parking calculations

- "Accessory use" is not determined based on how many parking spots are required.  The ordinance is specific.



**EXHIBIT A**

14

# The Board of Adjustment must Faithfully Apply its own Zoning Ordinances

- *Shupe v. Boulder County*, 230 P.3d 1269, 1274 (Colo. App. 2010)
  - "[T]he BOA abused its discretion by adopting the director's determination that the principal use of the property is residential use, because the director and the BOA misapplied the plain language of the code."

- Plain language of Zoning Ordinance 3602:

  Accessory Use:  A use naturally and normally incidental to, subordinate to, **and devoted exclusively** to the principal use.

- The expansion of the car wash is not an expansion of a nonconforming use as it is not devoted exclusively to fuel service



15

# Twin Star's Car Wash is not a "Substantial Detriment"

- Expansion of a car wash does not "substantially" harm the public
  - A new car wash is being put in next door
  - A car wash already exists
  - There is a refurbished car wash one block away

- The car wash does substantially extend the life of fuel stations in Castle Pines.

- If the car wash may be approved as an additional <u>principal use</u> it does not pose a substantial detriment to the public good



16

# Twin Star's Uses are Consistent with Neighboring Businesses





17

**EXHIBIT A**

# The Board of Adjustment Should Treat All Similar Businesses Fairly

Castle Pines cannot treat Twin Star's car wash differently than car washes and gas stations operated by other entities.

– *Hale v. Denver*, 159 Colo. 341, 346, 411 P.2d 332, 335 (Colo. 1966) (overturning ordinance that prohibited some businesses, but not others, from dispaying gardening tools outside).



18

**EXHIBIT A**

# The Board of Adjustment Should Not Render Twin Star's Car Wash Useless

- The Board of Adjustment's decision becomes a taking based on "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations." *Dep't of Health v. Mill*, 887 P.2d 993, 999-1000 (Colo. 1994).

- Allowing competitors to open new/refurbished car washes while preventing Twin Star's expansion significantly impacts Twin Star's reasonable expectations.



**EXHIBIT A**

# **Conclusion**

- Castle Pines is permitting modern car washes to be built in Twin Star's immediate vicinity.

- The rejection of the expansion is not supported by the ordinances.
  - A car wash is not a nonconforming use or an existing structure devoted to a nonconforming use
  - This car wash is not an accessory use

- Improved car washes are a public benefit

- Twin Star should be allowed to proceed with its expansion



20

| | |
|---|---|
| **DISTRICT COURT, DOUGLAS COUNTY, COLORADO**<br>Court Address:<br>400 Justice Way, Suite 2009<br>Castle Rock, Colorado 80109<br>Telephone: (720) 437-6200 | DATE FILED: April 22, 2021 7:22 PM<br>FILING ID: C416DEA4A00CF<br>CASE NUMBER: 2021CV30292 |
| **Plaintiff:**<br>TWIN STAR ENERGY, LLC, a Colorado limited liability company<br><br>**v.**<br><br>**Defendants:**<br>BOARD OF ADJUSTMENT OF THE CITY OF CASTLE PINES, STATE OF COLORADO, a body corporate and public, and CITY OF CASTLE PINES IN DOUGLAS COUNTY, STATE OF COLORADO, a municipal corporation | ▲ COURT USE ONLY ▲ |
| **Attorneys for Plaintiff:**<br>Gregory S. Tamkin, Colo. Reg. No. 27105<br>Stephen R. Weingold, Colo. Reg. No. 52897<br>Dorsey & Whitney LLP<br>1400 Wewatta Street, Suite 400<br>Denver, Colorado 80202<br>Telephone: (303) 629-3400<br>Fax: (303) 629-3450<br>Email: tamkin.greg@dorsey.com<br>Email: weingold.stephen@dorsey.com | Case Number:<br><br><br><br>Division          Courtroom |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT**

1. **This cover sheet shall be filed with each pleading containing an initial claim for relief in every district court civil (CV) case, and shall be served on all parties along with the pleading.** It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. **Check one of the following:**

   ☐ This case is governed by C.R.C.P. 16.1 because:

   - The case is not a class action, domestic relations case, juvenile case, mental health case, probate case, water law case, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding; *AND*

   - A monetary judgment over $100,000 is not sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

   ☒ This case is not governed by C.R.C.P. 16.1 because (check ALL boxes that apply):

**EXHIBIT A**

☐   The case is a class action, domestic relations case, juvenile case, mental health case, probate case, water law case, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding.

☒   A monetary judgment over $100,000 is sought by any party against any other single party.  This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

☐   Another party has previously indicated in a Case Cover Sheet that the simplified procedure under C.R.C.P. 16.1 does not apply to the case.

*NOTE: In any case to which C.R.C.P. 16.1 does not apply, the parties may elect to use the simplified procedure by separately filing a Stipulation to be governed by the rule within 49 days of the at-issue date.  See C.R.C.P. 16.1(e).  In any case to which C.R.C.P. 16.1 applies, the parties may opt out of the rule by separately filing a Notice to Elect Exclusion (JDF 602) within 35 days of the at-issue date.  See C.R.C.P. 16.1(d).*

☐   A Stipulation or Notice with respect to C.R.C.P. 16.1 has been separately filed with the Court, indicating:

      ☐   C.R.C.P. 16.1 applies to this case.

      ☐   C.R.C.P. 16.1 does not apply to this case.

**3.**   ☐   This party makes a **Jury Demand** at this time and pays the requisite fee.  *See* C.R.C.P. 38. (Checking this box is optional.)

Dated:  April 22, 2021

*s/ Gregory S. Tamkin*
Signature of Attorneys for Plaintiff
Gregory S. Tamkin
Stephen R. Weingold
Dorsey & Whitney LLP
1400 Wewatta Street, Suite 400
Denver, Colorado 80202
Telephone: (303) 629-3400
Fax: (303) 629-3450
Email: tamkin.greg@dorsey.com
Email: weingold.stephen@dorsey.com
Email: shoaei.maral@dorsey.com

**EXHIBIT A**

| District Court, Douglas County, Colorado<br>Court Address:<br>400 Justice Way Ste. 2009<br>Castle Rock, CO 80109<br>Telephone: (720) 437-6200 | DATE FILED: April 22, 2021 7:22 PM<br>FILING ID: C416DEA4A00CF<br>CASE NUMBER: 2021CV30292 |
|---|---|
| **Plaintiff:**<br>TWIN STAR ENERGY, LLC, a Colorado Limited Liability Company<br><br>v.<br><br>**Defendants:**<br>BOARD OF ADJUSTMENT OF THE CITY OF CASTLE PINES, STATE OF COLORADO, a body corporate and public, and CITY OF CASTLE PINES IN DOUGLAS COUNTY, STATE OF COLORADO, a municipal corporation | ▲   **COURT USE ONLY**   ▲<br><br>Case Number:<br><br>Division:        Courtroom: |
| **DISTRICT COURT CIVIL SUMMONS** ||

**TO THE ABOVE NAMED DEFENDANT:  Board of Adjustment of the City of Castle Pines, State of Colorado**
**c/o Lori Strand, Castle Pines City Attorney**
**360 Village Square Lane, Suite B**
**Castle Pines, CO 80108**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint.  If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you.  If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you.  Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: April 22, 2021

_____
Clerk of Court/Clerk

_s/ Gregory S. Tamkin_____
Signature of Attorneys for Plaintiff
Gregory S. Tamkin, Colo. Reg. No. 27105
Stephen R. Weingold, Colo. Reg. No. 52897
Dorsey & Whitney LLP
1400 Wewatta Street, Suite 400
Denver, Colorado 80202
Telephone: (303) 629-3400
Fax: (303) 629-3450
Email: tamkin.greg@dorsey.com
Email: weingold.stephen@dorsey.com

**EXHIBIT A**

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:**   A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal.  The plaintiff has 14 days from the date this summons was served on you to file the case with the court.  You are responsible for contacting the court to find out whether the case has been filed and obtain the case number.  If the plaintiff files the case within this time, then you must respond as explained in this summons.  If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

JDF 600   R10-13    DISTRICT COURT CIVIL SUMMONS

**EXHIBIT A**

| District Court, Douglas County, Colorado<br>Court Address:<br>400 Justice Way Ste. 2009<br>Castle Rock, CO 80109<br>Telephone: (720) 437-6200 | DATE FILED: April 22, 2021 7:22 PM<br>FILING ID: C416DEA4A00CF<br>CASE NUMBER: 2021CV30292 |
|---|---|
| **Plaintiff:**<br>TWIN STAR ENERGY, LLC, a Colorado Limited Liability Company<br><br>v.<br><br>**Defendants:**<br>BOARD OF ADJUSTMENT OF THE CITY OF CASTLE PINES, STATE OF COLORADO, a body corporate and public, and CITY OF CASTLE PINES IN DOUGLAS COUNTY, STATE OF COLORADO, a municipal corporation | ▲   **COURT USE ONLY**   ▲<br><br>Case Number:<br><br>Division:        Courtroom: |

## DISTRICT COURT CIVIL SUMMONS

**TO THE ABOVE NAMED DEFENDANT:** **City of Castle Pines in Douglas County, State of Colorado**
**c/o Lori Strand, Castle Pines City Attorney**
**360 Village Square Lane, Suite B**
**Castle Pines, CO 80108**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint.  If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you.  If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you.  Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: April 22, 2021

_____
Clerk of Court/Clerk

*s/ Gregory S. Tamkin*
_____
Signature of Attorneys for Plaintiff
Gregory S. Tamkin, Colo. Reg. No. 27105
Stephen R. Weingold, Colo. Reg. No. 52897
Dorsey & Whitney LLP
1400 Wewatta Street, Suite 400
Denver, Colorado 80202
Telephone: (303) 629-3400
Fax: (303) 629-3450
Email: tamkin.greg@dorsey.com
Email: weingold.stephen@dorsey.com

JDF 600   R10-13    DISTRICT COURT CIVIL SUMMONS

**EXHIBIT A**

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal.  The plaintiff has 14 days from the date this summons was served on you to file the case with the court.  You are responsible for contacting the court to find out whether the case has been filed and obtain the case number.  If the plaintiff files the case within this time, then you must respond as explained in this summons.  If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

JDF 600   R10-13    DISTRICT COURT CIVIL SUMMONS

**EXHIBIT A**